UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYBERSOURCE CORPORATION,<br><br>    Plaintiff,<br><br>  v.<br><br>RETAIL DECISIONS, INC.,<br><br>    Defendant.<br>_____/ | No. C 04-03268 MHP<br><br>**MEMORANDUM & ORDER**<br><br>**Re: Defendant's Motion for Summary Judgment of Invalidity For Failure to Meet the Written Description Requirement** |

Plaintiff CyberSource Corporation ("CyberSource") brought suit against defendant Retail Decisions, Inc. ("ReD"), alleging infringement of U.S. Patent No. 6,029,154 ("the '154 patent"). ReD brings this motion for summary judgment of invalidity based on the '154 patent's alleged failure to meet the written description requirement of 35 U.S.C., section 112, paragraph 1. Having considered the parties' arguments and for the reasons stated below, the court enters the following memorandum and order.

BACKGROUND

I.    Procedural History

CyberSource filed its application for the '154 patent on July 28, 1997, and the patent issued on February 22, 2000. Gilfoil Dec., Exhs. A & B. The '154 patent is a business methods patent, disclosing methods for detecting fraud in an Internet credit card transaction between a consumer and a merchant. See id., Exh. B. CyberSource initiated this action on August 11, 2004. ReD thereafter

1  sought reexamination of the '154 patent by the U.S. Patent and Trademark Office (PTO) and
2  obtained a stay of this action for that purpose. See Docket Entry 43. At a July 14, 2008, case
3  management conference, the parties informed the court that they expected the imminent issuance of
4  the reexamination certificate for the '154 patent. See Gilfoil Dec., Exh. O, at 3. At that conference,
5  the court invited ReD to file any invalidity motions it might bring that did not raise issues requiring
6  claim construction, once reexamination was complete. Id. at 12-14. The reexamination certificate
7  issued on August 5, 2008. Id., Exh. D. ReD filed this motion on August 25, 2008, and the court
8  entertained oral argument on October 6, 2008.

II.     Facts Relating to the Written Description

Before the '154 patent issued in 2000, CyberSource filed a continuation application.[1] The continuation application was filed with a specification identical to the one filed with the application that led to the parent '154 patent. See Baughman Dec., Exhs. J-M. The continuation application's proposed Claim 27 recites the limitation "constructing a map of credit card numbers based upon the other transactions." Id., Exh. L at 9. This proposed claim language is identical to the limitation recited in all three claims of the '154 patent, both as originally issued and as reissued following reexamination. See Gilfoil Dec., Exh. B. What became Claim 3 in the '154 patent was originally Claim 10 in the initial application that led to the '154 patent. Id., Exh. A at 9. This original Claim 10 also read "constructing a map of credit card numbers based upon the other transactions," and it was never amended. See id., Exh. A at 9, Exh. B at 6:4-5, Exh. D at 2:43-44. Original Claim 16 also contained the identical limitation. Id., Exh. A at 11.

On May 16, 2002, the examiner considering the continuation application rejected the limitation "constructing a map of credit card numbers based upon the other transactions" for failure to meet the written description requirement. See Baughman Dec., Exh. M at 5. On July 29, 2002, CyberSource's patent attorney responded to the rejection:

> In paragraph 6 of the Office Action, Claim 27 was rejected under 35 U.S.C. § 112, first paragraph, as allegedly containing subject matter which was not described in the specification in a way to reasonably convey to one skilled in the art that the inventor was in possession of the claimed invention at the time of filing. The Action calls

1  attention to an inconsistency in the application wherein the specification and
2  drawings disclose constructing a map of credit card transactions, not of credit card numbers, as recited in Claim 27. Claim 27 is amended herein to correct this
3  inconsistency of terms between the specification and the claims. Therefore, withdrawal of the rejection of Claim 27 on this basis is requested.

4  Id., Exh. N at 8.

5  CyberSource amended the continuation claims to refer to "constructing a map of credit card

6  *transactions*," instead of "constructing a map of credit card *numbers*." Id. at Appendix (emphasis

7  added).

8

9  LEGAL STANDARD

10  I.   Summary Judgment

11  Summary judgment is proper when the pleadings, discovery and affidavits show that there is

12  "no genuine issue as to any material fact and that the moving party is entitled to judgment as a

13  matter of law." Fed.R.Civ.P. 56(c). Material facts are those which may affect the outcome of the

14  case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is

15  genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving

16  party. Id. The party moving for summary judgment bears the burden of identifying those portions

17  of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material

18  fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On an issue for which the opposing party

19  will have the burden of proof at trial, the moving party need only point out "that there is an absence

20  of evidence to support the nonmoving party's case." Id. at 325.

21  Once the moving party meets its initial burden, the nonmoving party must go beyond the

22  pleadings and, by its own affidavits or discovery, "set out specific facts showing a genuine issue for

23  trial." Fed. R. Civ. P. 56(e)(2). Mere allegations or denials do not defeat a moving party's

24  allegations. Id.; Gasaway v. Nw. Mut. Life Ins. Co., 26 F.3d 957, 959-60 (9th Cir.1994). The court

25  may not make credibility determinations, and inferences to be drawn from the facts must be viewed

26  in the light most favorable to the party opposing the motion. Masson v. New Yorker Magazine, 501

27  U.S. 496, 520 (1991); Anderson, 477 U.S. at 255.

28

3

II. <u>Invalidity for Failure to Meet the Written Description Requirement</u>

By statute, patents are presumed to be valid. 35 U.S.C. § 282. A party asserting invalidity has, therefore, the burden of establishing such invalidity by clear and convincing evidence. <u>U.S. Gypsum Co. v. National Gypsum Co.</u>, 74 F.3d 1209, 1212 (Fed. Cir. 1996). The validity of a patent depends, among other things, on compliance with the written description requirement of 35 U.S.C., section 112, paragraph 1. See <u>Space Systems/Loral, Inc. v. Lockheed Martin Corp.</u>, 405 F.3d 985, 987 (Fed. Cir. 2005). Section 112, paragraph 1, states:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

35 U.S.C. § 112 ¶ 1.

Although a patent's specification need not include information that is already known and available to one of ordinary skill in the art to which the patent pertains, its description of the invention claimed must be sufficient to convey to such an ordinarily skilled artisan that the inventor was in possession of the invention *on the date that the patent application was filed*. <u>Lockwood v. Am. Airlines, Inc.</u>, 107 F.3d 1565, 1572 (Fed. Cir. 1997) (emphasis added); <u>Vas-Cath Inc. v. Mahurkar</u>, 935 F.2d 1555, 1563-64 (Fed. Cir. 1991). This is achieved "by such descriptive means as words, structures, figures, diagrams, formulas, etc., that fully set forth the claimed invention." <u>Lockwood</u>, 107 F.3d at 1572. The requirement is not met if, despite a showing of possession, the claimed invention is not adequately described. See <u>Enzo Biochem, Inc. v. Gen-Probe, Inc.</u>, 323 F.3d 956, 969-970 (Fed. Cir. 2002). The issue of compliance with the written description requirement is a question of fact. <u>Tronzo v. Biomet, Inc.</u>, 156 F.3d 1154, 1158 (Fed. Cir. 1998).

DISCUSSION

ReD contends that the claim limitation "constructing a map of credit card numbers based upon the other transactions" does not meet the written description requirement of 35 U.S.C., section 112, paragraph 1. It is well established that the written description requirement does not require the

4

1  applicant to describe exactly the subject matter claimed but rather requires the applicant to "describe
2  the claimed invention so that one skilled in the art can recognize what is claimed." Koito Manuf.
3  Co., Ltd. v. Turn-Key-Tech, LLC, 381 F.3d 1142, 1154 (Fed. Cir. 2004), quoting Enzo Biochem,
4  323 F.3d at 968; see also Lockwood, 107 F.3d at 1572.  Moreover, there is no rule requiring a
5  description of any particular length.  See In re Hayes Microcomputer Products, Inc. Patent
6  Litigation, 982 F.2d 1527, 1534 (Fed. Cir. 1992) ("[T]he adequacy of the description of an invention
7  depends on its content in relation to the particular invention, not its length.").  ReD objects to the
8  testimony of CyberSource's expert, but ReD offers no independent evidence, much less clear and
9  convincing evidence, that a person of ordinary skill in the art would fail to recognize from the
10 description what is claimed.[2]  There is simply no evidence in the record demonstrating that the term
11 "map of credit card numbers" requires a more detailed description.[3]  Instead, ReD hangs its hat on
12 two facts: that "constructing a map of credit card numbers" is never described anywhere in the
13 application, and that CyberSource "admitted" the inconsistency between the original claim language
14 and the specification during reexamination.

15      There is no dispute that the challenged limitation is not described in the specification for the
16 '154 patent.  CyberSource addresses this problem by pointing out that original Claims 10 and 16 in
17 the initial application literally recite "constructing a map of credit card numbers."  Disclosure in an
18 originally filed claim can satisfy the written description requirement.  Union Oil Co. of Calif. v.
19 Atlantic Richfield Co., 208 F.3d 989, 998 n.4 (Fed. Cir. 2000), citing In re Gardner, 480 F.2d 879,
20 880 (C.C.P.A. 1973).[4]  A disclosure in the originally filed claim demonstrates that the inventor was
21 in possession of the invention as of the filing date sought.  Vas-Cath, 935 F.3d at 1563-1564.
22 However, the mere fact of disclosure in an originally filed claim is not dispositive.  For, in addition
23 to showing possession, the written description must, of course, "adequately describe the invention"
24 to meet the requirements of Section 112, paragraph 1.  Enzo Biochem, 323 F.3d at 969.

25      To prevail on its invalidity motion, ReD must show by clear and convincing evidence that
26 the written description requirement has not been met.  Merely pointing out that the limitation
27 language is not described anywhere in the specification or drawings is not enough, when original
28

5

1  claims in the initial application contain the language. To prevail, ReD must show that the
2  description contained in the original claims does not adequately describe the invention. Conclusory
3  statements that there are no "descriptive" words do not suffice. As noted above, ReD has offered no
4  evidence to show that one skilled in the art would be unable to recognize what has been claimed.
5  Applying the appropriate legal standards, ReD's mere observation that the limitation language is not
6  described in the specification or the drawings does not entitle it to summary judgment of invalidity.[5]

7  This does not conclude the analysis, however, because ReD has laid perhaps the most
8  emphasis on its contention that CyberSource should be held to its "admission" of an inconsistency
9  between the limitation language at issue and what was disclosed in the '154 specification. ReD
10 argues that this admission, by itself, provides the clear and convincing evidence needed for ReD to
11 prevail. Only in its reply brief did ReD articulate a clear legal theory, judicial estoppel, under which
12 CyberSource's purported admission entitles ReD to a judgment of invalidity; however, counsel for
13 ReD seemed to suggest in oral argument that ReD was not, in fact, arguing judicial estoppel. It
14 matters not whether ReD means to argue that the "admission" was somehow intrinsically controlling
15 or judicially binding, or rather that the "admission" creates judicial estoppel; both arguments are
16 without merit.

17 ReD cites to <u>Elkay Manuf. Co. v. Ebco Manuf. Co.</u>, 192 F.3d 973 (Fed. Cir. 1999), and
18 <u>Microsoft Corp. v. Multi-Tech Systems, Inc.</u>, 357 F.3d 1340 (Fed. Cir. 2004), to buttress its
19 argument that CyberSource's 2002 statements regarding the continuation application control the
20 interpretation of the '154 patent, which issued in 2000. The <u>Elkay</u> court held that the prosecution
21 history of an earlier patent applies with equal force to a subsequently issued patent. <u>Elkay</u> at 980.
22 Here, ReD wishes to apply the prosecution history of a later patent to an *earlier issued* patent, a
23 factual scenario not arising in <u>Elkay</u>. Similarly, <u>Microsoft</u> merely held that a statement regarding the
24 scope of a claim in a later patent could be "relevant" to the claim construction of an earlier-issued
25 patent. See <u>Microsoft</u> at 1350. This case is also clearly distinguishable from the instant case,
26 because the former addressed the scope of claims, not the written description requirement. These

6

authorities do not provide a basis for a finding that CyberSource's statements are judicially binding admissions or are otherwise controlling.

The doctrine of judicial estoppel is likewise unhelpful to ReD.[6] Relying on a single case, Synopsis, Inc. v. Magma Design Automation, Inc., No. C-04-3923 MMC, 2007 Dist. LEXIS 6814 (N.D. Cal. 2007) (Chesney, J.), ReD exhorts the court to find that CyberSource is estopped from disavowing its statement that the challenged limitation language did not meet the written description requirement. Synopsis, a case which did *not* apply judicial estoppel on its facts, applied the test for judicial estoppel formulated by the Supreme Court in New Hampshire v. Maine, 532 U.S. 742 (2001) (finding the state of New Hampshire to be judicially estopped from asserting that the inland Piscataqua River boundary ran along the Maine shore when New Hampshire had taken the contrary position in earlier litigation). Judicial estoppel is "an equitable doctrine invoked by a court at its discretion to prevent improper use of judicial machinery." Synopsis at *71, quoting New Hampshire at 750 (internal quotations omitted). It is applied only where there is "knowing misrepresentation to . . . or fraud on the court." Synopsis at *73, quoting Hamilton v. State Farm Fire & Casualty Co., 270 F.3d 778, 782 (9th Cir. 2001). The non-exclusive three-part New Hampshire test requires the following:

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

Synopsis at *72, quoting New Hampshire at 750-751.

Even were the court to agree that a patent examiner is a "court" for the purposes of judicial estoppel, none of the New Hampshire requirements is met in the instant case.[7] First, CyberSource's current position is not clearly inconsistent with its earlier position. The first sentence of CyberSource's explanation for amending Claim 27 notes that the claim was rejected for "allegedly" not meeting the written description requirement. Baughman Dec., Exh. N at 8. The use of this

7

qualification suggests a skeptical stance toward the examiner's rationale.[8] Furthermore, ReD has offered no evidence and established no presumption that the examiner withdrew his Section 112 objection as a result of CyberSource's alleged concession in its response. It is more likely that the examiner withdrew the rejection because CyberSource actually changed the claim language in the way indicated by the examiner to be acceptable. This is not a situation in which a litigant argues a point to a court and the court finds in the litigant's favor based on that argument: CyberSource was unable to receive approval for its original claim and was required to amend the claim in the way indicated by the examiner. Finally, there is no unfair or "second" advantage here, as there was none in Synopsis. See Synopsis at *76-77. Indeed, there has been no showing that CyberSource received a *first* advantage from its "admission," since there is no evidence that the examiner based his decision on CyberSource's explanation of its amendment. In short, ReD's judicial estoppel argument is without merit.

## CONCLUSION

For the foregoing reasons, defendant ReD's motion for summary judgment of invalidity for failure to meet the written description requirement is DENIED.

The court will entertain a motion relating to obviousness and/or novelty.

IT IS SO ORDERED.

Dated: October 10, 2008

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

8

**ENDNOTES**

1. Application number 09/442,106. See Baughman Dec., Exh. M at 1.

2. Counsel for ReD stated at oral argument that ReD did not need to offer expert testimony because CyberSource admitted that the specification and claims were inconsistent. The court addresses the effect of CyberSource's "admission" below.

3. Since ReD has not offered expert testimony to show that the description is insufficient, it is unnecessary to rule on whether CyberSource's expert is qualified to opine on this issue. Even were his declaration excluded, ReD still would not have met the evidentiary standard necessary for an invalidation of the patent. It is likewise unnecessary to speculate about just how much attention the initial examiner of the application leading to the '154 patent paid to the limitation at issue.

4. The cases upon which ReD relies do not stand for a contrary proposition. LizardTech, Inc. v. Earth Resource Mapping, Inc., 424 F.3d 1336, 1346 (Fed. Cir. 2005), merely emphasized that the description in the initial application must be adequate; it did not cast doubt upon the principle that an originally filed claim can provide the necessary written description. Nor does University of Rochester v. G.D. Searle & Co., Inc., 358 F.3d 916 (Fed. Cir. 2004), do so. That ruling rejected the plaintiff's argument that cases dealing with non-genetic materials should not be subject to separate enablement and written description inquiries. Id. at 925.

5. It is unnecessary to address CyberSource's alternative argument that a "map of credit card numbers" is necessarily a subset of the "map of transactions," a term which is described in the '154 patent's specification.

6. ReD did not advance an argument based on prosecution history estoppel.

7. ReD has cited no authority to support the proposition that a patent examiner is equivalent to a court for the purposes of judicial estoppel, and the court reserves judgment on this question.

8. Even if there was a clear admission, it was only an admission of an "inconsistency of terms between *the specification* and the claims." Baughman Dec., Exh. M at 8 (emphasis added). Such an admission would not address the fact that the "map of credit card numbers" language appears in Original Claims 10 and 16.