UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYBERSOURCE CORPORATION,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>RETAIL DECISIONS, INC.,<br><br>　　　　Defendant.<br>_____ / | No. C 04-03268 MHP<br><br>**OPINION**<br><br>**Re: Defendant's Motion for Summary Judgment of Invalidity Under 35 U.S.C. § 101 for Failure to Claim Patent-Eligible Subject Matter** |

　　　In this patent infringement litigation, plaintiff CyberSource Corporation has asserted claims 2 and 3 of U.S. Patent No. 6,029,154 ("the '154 patent") against defendant Retail Decisions, Inc. Defendant brings a motion for summary judgment of invalidity, contending that the patent claims are not drawn to patent-eligible subject matter as required by 35 U.S.C. section 101. Having considered the parties' arguments and submissions, the court enters the following opinion.

BACKGROUND

I.　　The '154 Patent

　　　The patent claims a method and system for detecting fraud in a credit card transaction between a consumer and a merchant over the internet. Claims 2 and 3 are independent claims, but claim 2 recites the steps of claim 3.[1] Claim 3, as amended during reexamination, reads in its entirety:

> 3. A method for verifying the validity of a credit card transaction over the Internet comprising the steps of:
>
>   a) obtaining information about other transactions that have utilized an Internet address that is identified with the credit card transaction;
>
>   b) constructing a map of credit card numbers based upon the other transactions and;
>
>   c) utilizing the map of credit card numbers to determine if the credit card transaction is valid.

Docket No. 166, Exh. A (Reexamination Certificate) at 4, column 2, lines 38-46. Amended claim 2 reads in its entirety:

> 2. A computer readable medium containing program instructions for detecting fraud in a credit card transaction between a consumer and a merchant over the Internet, wherein execution of the program instructions by one or more processors of a computer system causes the one or more processors to carry out the steps of:
>
>   a) obtaining credit card information relating to transactions from the consumer; and
>
>   b) verifying the credit card information based upon values of plurality of parameters, in combination with information that identifies the consumer, and that may provide an indication whether the credit card transaction is fraudulent,
>
>   wherein each value among the plurality of parameters is weighted in the verifying step according to an importance, as determined by the merchant, of that value to the credit card transaction, so as to provide the merchant with a quantifiable indication of whether the credit card transaction is fraudulent,
>
>   wherein execution of the program instructions by one or more processors of a computer system causes the one or more processors to carry out the further steps of;
>
>   obtaining information about other transactions that have utilized an Internet address that is identified with the credit card transaction; constructing a map of credit card numbers based upon the other transactions; and utilizing the map of credit card numbers to determine if the credit card transaction is valid.

Id., lines 9-37. The last set of steps recited in claim 2 is identical to the three steps recited in claim 3.

II.     Relevant Procedural History

On July 28, 1997, John Philip Pettit filed the application for what became the '154 patent. The patent issued on February 22, 2000. Plaintiff, the assignee of the '154 patent, initiated this action on August 11, 2004. Defendant thereafter sought ex parte reexamination of the patent by the

2

1  U.S. Patent and Trademark Office (USPTO) and obtained a stay of this action for that purpose. The
2  ex parte reexamination certificate issued on August 5, 2008. On December 19, 2008, the parties
3  filed their joint claim construction statement. Defendant filed this motion on January 26, 2009, and
4  the court heard oral argument on the motion on March 23, 2009.

LEGAL STANDARDS

I.  Patent Validity and Statutory Subject Matter

Patents are presumed to be valid. 35 U.S.C. § 282. A party asserting invalidity has the burden of establishing such by clear and convincing evidence. Takeda Chem. Indus., Ltd. v. Alphapharm Pty., Ltd., 492 F.3d 1350, 1355 (Fed. Cir. 2007).

The first substantive section of the patent statute provides, "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. Excluded from patent protection are fundamental principles, including laws of nature, natural phenomena and abstract ideas, even when these may be deemed literally to fall within one or more statutory categories. Diamond v. Diehr, 450 U.S. 175, 185 (1981); see also In re Ferguson, ___ F.3d ___, 2009 WL 565074 at *3 (Fed. Cir. Mar. 6, 2009). The drawing of a claim to statutory subject matter is a threshold requirement for patentability. Parker v. Flook, 437 U.S. 584, 593 (1978); see also Diehr, 450 U.S. at 188.

The U.S. Court of Appeals for the Federal Circuit recently clarified the proper legal test for determining whether an invention may be considered a statutory "process" under section 101. See In re Bilski, 545 F.3d 943 (Fed. Cir. Oct. 30, 2008) (en banc). The Bilski court held the "machine-or-transformation test" to be the exclusive test for such determinations. Id. at 956. Under this test, a claimed process is patent-eligible "if: (1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing." Id. at 954, citing Gottschalk v. Benson, 409 U.S. 63, 70 (1972). An applicant may demonstrate patent eligibility by meeting either prong of the test. Bilski, 545 F.3d at 961. However, the "machine implementation" or "transformation" must

1 "impose meaningful limits on the claim's scope." Id. at 961 (citation omitted). In addition, "the
2 involvement of the machine or transformation in the claimed process must not merely be
3 insignificant extra-solution activity." Id. at 962, citing Flook, 437 U.S. at 590.

4      The Bilski applicants did not contend that their process met the machine implementation
5 prong of the test; therefore, the court left to future cases the task of "elaborating the precise
6 contours" of that prong. Bilski, 545 F.3d at 962. The facts of Bilski did provide the court an
7 opportunity to elaborate upon the "transformation" prong of the test. The patent at issue in Bilski
8 claimed a method for hedging risk in the field of commodities options trading. Id. at 950. The court
9 held that the claims at issue in that case did not meet the section 101 threshold because they did not
10 transform any "article"—i.e., they did not "involve the transformation of any physical object or
11 substance, or an electronic signal representative of any physical object or substance." Id. at 964.
12 "Purported transformations or manipulations simply of public or private legal obligations or
13 relationships, business risks, or other such abstractions cannot meet the test because they are not
14 physical objects or substances, and they are not representative of physical objects or substances."
15 Id. at 963. The court also noted that "the application of only human intelligence to the solution of
16 practical problems is no more than a claim to a fundamental principle." Id. at 965, citing In re
17 Comiskey, 499 F.3d 1365, 1377-1379 (Fed. Cir. 2007) ("Comiskey I"). A mental process is not
18 patent-eligible subject matter. See Bilski, 545 F.3d at 952, 960-961, 965.

19

20 II.     Summary Judgment

21      Summary judgment may be granted only when, drawing all inferences and resolving all
22 doubts in favor of the non-moving party, there are no genuine issues of material fact and the moving
23 party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see generally Anderson v.
24 Liberty Lobby, Inc., 477 U.S. 242, 247-255 (1986). The moving party bears the burden of
25 identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of
26 a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A material fact
27 is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving
28

4

party. Anderson, 477 U.S. at 248. Once the moving party meets its initial burden, the non-moving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. Fed R. Civ. P. 56(e); see Anderson, 477 U.S. at 250.

DISCUSSION

Defendant contends that claims 2 and 3 of the '154 patent claim mental processes that fail to meet either the "transformation" or "machine implementation" prongs of the machine-or-transformation test. Plaintiff argues that the claims do not preempt any fundamental principles and attempts to demonstrate that both claims meet one or both prongs of the test. Plaintiff argues, in the alternative, that claim 2 is a "Beauregard claim" not subject to Bilski's analysis.

The Federal Circuit has characterized claim construction as "an important first step" in a section 101 analysis. Bilski, 545 F.3d at 951. The parties have filed a joint claim construction statement detailing their respective proposed constructions. See Docket No. 159 (Joint Claim Construction Statement). In this case, ruling on defendant's section 101 motion does not require that the claims actually be construed. For the purposes of this motion, the court adopts plaintiff's proposed constructions except where plaintiff has urged the court to adopt a different one. Where plaintiff has so urged, the court adopts the construction preferred by plaintiff, the non-moving party. In other words, the analysis below utilizes the constructions most favorable to plaintiff, as indicated by plaintiff.

I.      Transformation

On their face, the claimed methods simply obtain and compare intangible data pertinent to business risks. Plaintiff argues that the methods described in claims 2 and 3 nevertheless meet the transformation prong, because they manipulate both credit card numbers and IP addresses.

5

### A. Credit Card Numbers

Plaintiff asserts that a claim need only manipulate data representing physical objects to meet the transformation prong. According to plaintiff, the fraud verification process manipulates credit card numbers by using them to construct and utilize a "map of credit card numbers."

At the outset, it must be noted that the respective ordinary meanings of the terms "transformation" and "manipulation" differ. "Transformation" suggests a fundamental change, whereas "manipulation" does not. The Bilski court made one reference to the "manipulation" of certain abstractions and another reference to "transformations or manipulations," perhaps suggesting some congruence between the two terms. See 545 F.3d at 962-963. Yet these references appear in a discussion explaining why manipulations of abstractions do *not* meet the transformation prong. See id. There is no indication that the Federal Circuit, having reaffirmed the machine-or-transformation test, intended to weaken the key term "transformation" by equating it with mere "manipulation." The processes claimed in the '154 patent unquestionably "manipulate" credit card numbers by using them to build a "map." But it is equally clear that neither credit card numbers nor credit cards are "transformed." Plaintiff itself characterizes the step of "constructing a map of credit card numbers based upon the other transactions" as "creat[ing] a data structure or logical association of those credit card numbers." Opposition at 6-7; see also Joint Claim Construction Statement, Exh. A at 8-9. It is difficult to distinguish this creation of a data structure from the combination of a data gathering step and an algorithm rejected in In re Grams, 888 F.2d 835 (Fed. Cir. 1989). See Bilski, 545 F.3d at 963 (discussing Grams).[2] Simply collecting data into a vague sort of "map" does not amount to a "transformation."

Even if the court were to hold that "manipulation" suffices to effect a "transformation," the question would remain whether either claim transforms an "article"—i.e., any physical object or substance, or an electronic signal representative of any physical object or substance. See id. at 964. A credit card number is not a physical object or substance, and plaintiff does not argue to the contrary. It argues, however, that the manipulated credit card numbers represent physical objects:

6

credit cards. Plaintiff's expert describes, in some detail, the physical characteristics of credit cards, as well as the international standards for, and importance of, those characteristics.

There is no dispute that credit cards are physical objects and that their particular physical characteristics have significance in various contexts. Yet a credit card number no more represents a physical credit card than a card represents a number. Both the number and the card represent a common underlying abstraction—a credit card account, which is a series of rights and obligations existing between an account holder or account holders[3] and a card issuer. The conclusions of plaintiff's expert do not raise any genuine issue of fact to the contrary. Indeed, the very premise of the purported invention is the need to verify the authenticity of a credit card number in an environment in which the physical card is unavailable to the merchant. Banks could hypothetically issue credit card accounts and numbers untethered to physical cards, to be used for online purchases only. Under plaintiff's theory, such a move would magically render its method non-statutory, even though nothing about the method would have changed.

The <u>Bilski</u> decision held that transformations of "public or private legal obligations or relationships, business risks, or other such abstractions" do not meet the transformation test. <u>See</u> <u>id.</u> at 963. Options like those described in the <u>Bilski</u> patent do not simply float in the ether. A piece of paper upon which the terms of an option are written is, like a credit card, a physical object. Yet this connection to a physical medium does not create patent eligibility, because an option ultimately represents the abstraction of a legal obligation or business risk. A process purportedly transforming deedshares has likewise been held non-statutory, even though deedshares may be written down and even though they pertain to real estate. <u>Fort Prop.'s, Inc. v. Am. Master Lease, LLC</u>, 2009 U.S. Dist. LEXIS 7217, at * 11 (C.D. Cal. Jan. 22, 2009). Like options or deedshares, credit card accounts represent sets of legal rights and relationships, not "articles."

Plaintiff relies upon two cases to support its assertion that the manipulation of credit card numbers suffices to transform an "article." In the case of <u>In re Abele</u>, 684 F.2d 902 (C.C.P.A. 1982), the Federal Circuit's predecessor court reviewed a claim reciting data produced by a mathematical algorithm along with the limitation "said data is X-ray attenuation data produced in a

7

1  two dimensional field by a computed tomography scanner." Id. at 908. The court held that claim to
2  be patentable, while rejecting a claim that simply recited the algorithm. Id. at 909. The Bilski court
3  approved of Abele's result (though not the test applied), noting that the data "clearly represented
4  physical and tangible objects, namely the structure of bones, organs, and other body tissues." Bilski,
5  545 F.3d at 962-963. Plaintiff contends that a credit card number is related to a physical credit card
6  in the same way that Abele's data was related to the structure of body tissues. Yet, the Federal
7  Circuit stated that it was "the transformation of the data itself into a visual depiction" that sufficed to
8  meet the transformation prong in Abele. Id. at 963. As long as the claim is "limited to a visual
9  depiction that represents specific physical objects or substances," there is no concern that a
10 fundamental principle will be wholly preempted. Id. In this case, there is no evidence suggesting
11 that credit card numbers or the claimed "map of credit card numbers," under either plaintiff's or
12 defendant's construction of the phrase,[4] "visually depict" a credit card with particular physical
13 characteristics.

14       The other case relied upon by plaintiff, Arrhythmia Research Tech., Inc. v. Corazonix Corp.,
15 958 F.2d 1053 (Fed. Cir. 1992), is equally unhelpful.[5] That case also dealt with a diagnostic method
16 and explicitly applied the "Freeman-Walter-Abele" test rejected in Bilski. Id. at 1058; Bilski, 545
17 F.3d at 959 n.17 (overruling portions of Arrhythmia and other cases relying on Freeman-Walter-
18 Abele test). Contrary to plaintiff's assertion, nothing in the post-Bilski case of In re Comiskey, 554
19 F.3d 967 (Fed. Cir. 2009) ("Comiskey II"), resurrects Arrhythmia's analysis. See Comiskey II at
20 979 n.14 and accompanying text (mentioning Arrhythmia).[6] A reasonable jury could not conclude
21 that the patented method's manipulation of credit card numbers meets the transformation prong of
22 the machine-or-transformation test.[7]

23

24       B.    IP Addresses

25       Plaintiff next argues that the court should adopt defendant's construction of "Internet
26 address" for the purposes of this motion and assume that references to an "Internet address" in the
27 claims refer exclusively to an "Internet Protocol (IP) address."[8] An IP address denotes a hardware
28

8

1  device such as a host computer, set of computers or a router that is connected to the internet. Thus,
2  an IP address represents a physical object and could potentially meet the transformation prong.

3  The problem with this argument is that the claimed method does not transform or even
4  manipulate the IP address itself. The limitation containing the term "Internet address," which is
5  common to claims 2 and 3, reads: "obtaining information about other transactions that have utilized
6  an Internet address that is identified with the credit card transaction." The information thus obtained
7  is then used to construct a map of credit card numbers. The phrase "that have utilized an Internet
8  address" is a modifier of the word "transactions." The IP address itself is not an object of
9  transformation; indeed, it would make no sense to change the IP address, since its purpose is to serve
10 as an identifier. Furthermore, an IP address is not a "visual depiction" of a computer in the sense
11 required by the Bilski court's reading of Abele. See Bilski, 545 F.3d at 963. The claims do not, as a
12 matter of law, meet the transformation prong.

14 II.     Machine Implementation and the Internet

15 Defendant argues that the methods of claims 2 and 3 could literally be performed on a piece
16 of paper or in one's mind. A specific machine is neither necessary for the method nor recited in the
17 patent claims, according to defendant. Indeed, the written description includes nary a detail about
18 the "one or more processors" recited by claim 2, and claim 3 does not recite the use of a processor or
19 computer at all. Plaintiff nevertheless contends that both patent claims are tied to a specific
20 machine.

21 Former vice-president Al Gore did not actually take credit for inventing the internet, and
22 neither does plaintiff; however, plaintiff does contend that the entire internet is the machine
23 implementation of its method. Both claims recite, in their respective preambles, fraud detection
24 "over the Internet." Accordingly, argues plaintiff, the claims are implemented in the myriad
25 "general and special purpose computers, routers, hubs, switches and other specialized hardware"
26 comprising the internet. The Bilski court specifically left it to future cases to determine "whether or
27 when recitation of a computer suffices to tie a process claim to a particular machine." 545 F.3d at

9

962. This court is now presented with the question of whether recitation of "over the Internet" suffices to tie a process claim to a particular machine.

There are at least three reasons why it does not. First, the test requires that a claimed process be tied to "a *particular* machine." Id. (emphasis supplied). The purpose of this requirement is to ensure that all uses of a fundamental principle are not preempted in any field. Id. at 957. The internet is a network of millions of individual machines. Indeed, the internet was initially conceptualized as a network robust enough to withstand the loss of a large number of particular machines. See Barry M. Leiner et al., *A Brief History of the Internet*, available at http://www.isoc.org/internet/history/brief.shtml (as visited March 13, 2009, and available in the court's files). A distinct feature of the "packet switching" protocols underlying the internet is the capacity of data packets to reroute to reach their intended destinations if a first-attempted route is blocked due to the failure of a particular computer. See id. The internet continues to exist despite the addition or subtraction of any particular piece of hardware. It may be supposed that the internet itself, rather than any underlying computer or set of computers, is the "machine" to which plaintiff refers. Yet the internet is an abstraction. If every computer user in the world unplugged from the internet, the internet would cease to exist, although every molecule of every machine remained in place. One can touch a computer or a network cable, but one cannot touch "the internet." See Ferguson, 2009 WL 565074 at *5 (holding a company is not a machine because, inter alia, "you cannot touch the company").

Even if the "over the Internet" limitation could otherwise be considered a machine implementation, the involvement of the internet will not qualify as such where it merely constitutes "insignificant extra-solution activity." See Bilski, 545 F.3d at 962. A different rule would eviscerate section 101, because any "competent draftsman could attach some form of [extra]-solution activity to almost any mathematical formula," or, for that matter, mental process. Id. at 957. Plaintiff stresses that the power of the claimed processes resides in the application of fraud tests to more than just the credit card number from the subject transaction. Such processes can be carried out in contexts other than the internet. To give but one example, a merchant taking an order over the

10

telephone could use records or databases to cross-check all credit card numbers associated with that telephone number. An unpatentable mathematical theorem does not become patentable by virtue of a claim limitation stating that the theorem can be usefully applied to surveying techniques. See id. at 957, citing Flook, 437 U.S. at 590. Similarly, an unpatentable mental process for collecting data and weighing values does not become patentable by tossing in references to internet commerce.

Finally, the use of the internet does not impose meaningful limits on the scope of the claims. See Bilski, 545 F.3d at 961 (holding machine implementation or transformation must impose meaningful limits on claim scope). Plaintiff notes that its claims are limited to internet transactions and the use of credit cards, vice debit or gift cards. Yet plaintiff itself states in its opposition, "Credit card transactions over the Internet have become a staple of modern business." The claims of the '154 patent preempt the use of fundamental mental processes across an extraordinarily large and important segment of the commercial system. Plaintiff argues that limiting the '154 patent to the field of online credit card transactions provides a sufficient limit on claim scope, because all possible uses of the process are not preempted.

Otherwise non-statutory subject matter cannot be made patentable simply by limiting it to a particular technological field. See Bilski 545 F.3d at 957, citing Diehr, 450 U.S. at 191-192. A claim need not preempt all possible uses of a process to be found to lack meaningful limits on its scope. See Bilski at 966 ("And while Applicants argue that the scope of this pre-emption is limited to hedging as applied in the area of consumable commodities, the Supreme Court's reasoning has made clear that effective pre-emption of all applications of hedging even just within the area of consumable commodities is impermissible.").[9] The instant claims broadly preempt the fundamental mental process of fraud detection using associations between credit card numbers. A limitation to "only" the vast area of online credit card transactions is not meaningful. Defendant has demonstrated the absence of any genuine issue of material fact regarding the claims' failure to meet either prong of the machine-or-transformation test.

11

III.     A "Beauregard Claim"?

Claim 2's preamble begins: "A computer readable medium containing program instructions . . . ." Plaintiff argues, in the alternative, that this limitation transforms claim 2 from a process claim into a "specialized apparatus" or "Beauregard" claim.[10] In plaintiff's view, such a claim is a product claim to which the machine-or-transformation test does not apply. Plaintiff does not identify which of the three possible section 101 product categories it believes the claim falls into, i.e., machine, manufacture or composition of matter. See 35 U.S.C. § 101. The argument appears to be that, whatever claim 2's statutory category, the Beauregard doctrine exempts claims like this one from the machine-or-transformation inquiry.

The case of In re Beauregard, 53 F.3d 1583 (Fed. Cir. 1995), reviewed a rejection by the USPTO Board of Patent Appeals and Interferences ("the Board") of certain patent claims on the basis of the printed matter rule. Id. at 1584. Under that venerable doctrine, printed matter as such is ineligible for patent protection. See U.S. Credit Sys. Co. v. Am. Credit Indem. Co., 59 F. 139, 143 (2d Cir. 1893). This traditional "printed matter" rule concerns statutory subject matter; however, a newer and different, but related, "printed matter" rule holds that the combination of novel printed matter with a prior art substrate may render a claim non-obvious where there is a novel relationship to the substrate. Compare Application of Chatfield, 545 F.2d 152, 157 (C.C.P.A. 1976) (noting patent ineligibility of printed matter under section 101), with In re Gulack, 703 F.2d 1381 (Fed. Cir. 1983) (holding novel relationship between printed matter and prior art substrate rendered claims non-obvious under section 103). Both of these doctrines have been referred to as the "printed matter" rule, which can be a source of confusion. See In re Nuijten, 500 F.3d 1346, 1365-1367 (Fed. Cir. 2007) (Linn, C.J., concurring in part and dissenting in part) (discussing USPTO's confused invocation of "printed matter" doctrine in both 101 and 103 contexts).

The two-paragraph Beauregard opinion merely noted that, during the pendency of the appeal, the Commissioner of Patents and Trademarks had come to share the petitioner's view "that computer programs embodied in a tangible medium, such as floppy diskettes, are patentable subject matter under 35 U.S.C. § 101," i.e., are *not* barred by the traditional printed matter rule. 53 F.3d at 1584.

12

1  Since the parties had reached agreement on the point, the Federal Circuit found there to be no case
2  or controversy and remanded the case for further proceedings. Id. Plaintiff points to subsequent
3  decisions of the Board referring to the concept of a "Beauregard claim." See Ex parte Bo Li, 2008
4  Pat. App. LEXIS 27, at *11 (B.P.A.I. Nov. 6, 2008); Ex parte Van Beek, 2009 WL 112387, at *3
5  (B.P.A.I. Jan. 16, 2009).[11] Notably, neither of these decisions uses the "specialized apparatus"
6  nomenclature.[12]

7  The Beauregard case itself was not a decision on the merits of patentability. Indeed, neither
8  Bo Li nor Van Beek cite Beauregard. Those decisions rely instead upon section 2106.01 of the
9  USPTO's Manual of Patent Examining Procedure (MPEP) and the cases of In re Lowry, 32 F.3d
10 1579 (Fed. Cir. 1994), and In re Nuijten, 500 F.3d 1346 (Fed. Cir. 2007), cert. denied, 129 S.Ct. 70.
11 See Bo Li at *11[13]; Van Beek at *3. MPEP section 2106.01 discusses the patentability of functional
12 and non-functional descriptive material and does not reference the Beauregard case or Beauregard
13 claims at all. It instead largely relies upon Lowry. As for Lowry, that decision reversed a section
14 103 "printed matter" rejection of certain claimed data structures. 32 F.3d at 1583. The Federal
15 Circuit panel held a computer memory containing a stored data structure to have "patentable
16 weight," because the data structure imparted a physical organization to the information stored in the
17 memory. Id. at 1582-1583. The court noted that Lowry sought to patent neither the concept of a
18 data model in the abstract nor the content of data resident in a database; rather, Lowry sought to
19 patent data structures that imposed a physical organization on data. Id. The Lowry case was
20 decided before Beauregard and makes no reference to "specialized apparatus" claims.

21 The Nuijten court held that a manipulated electromagnetic signal was neither a
22 "manufacture" nor any other type of statutory subject matter. Nuitjen, 500 F.3d at 1357; see Bilski,
23 545 F.3d at 951 n.2 (declining to discuss Nuitjen because that case primarily concerned a
24 manufacture, not a process). The Nuitjen majority did not discuss Beauregard claims at all. Judge
25 Linn, writing separately, noted that the USPTO cited to Beauregard and that Beauregard was not
26 decided on the merits. See Nuitjen, 500 F.3d at 1365 & 1366 n.6 (Linn, C.J., concurring in part and
27 dissenting in part). Judge Linn speculated that the USPTO's concession in Beauregard derived from
28

13

1 Lowry and, perhaps, In re Alappat, 33 F.3d 1526 (Fed. Cir. 1994) (holding that a general purpose
2 computer operating pursuant to software may represent patentable subject matter). The Alappat case
3 has, in the meantime, been abrogated by Bilski, because it did not apply the machine-or-
4 transformation test. See Bilski, 545 F.3d at 959.

Having reviewed the above tangle of references to "Beauregard" claims and the facts of this case, the court reaches two conclusions. First, there is at present no legal doctrine creating a special "Beauregard claim" that would exempt claim 2 of the '154 patent from the analysis of Bilski. The USPTO has referred to "Beauregard claims" when assessing computer programs embedded in tangible media, but there is no legal support for the view that Beauregard extends the holding of Lowry. Like Auntie Mame's Uncle Beauregard, the footing of the so-called Beauregard doctrine is anything but sure.

Second, even if Beauregard and the USPTO decisions referring to it could be considered to set out a legal doctrine, and even if such doctrine survives Bilski, it would not provide a basis for plaintiff to avoid summary judgment. If a "Beauregard claim" is anything, it is an exception to the traditional printed matter rule for computer programs embodied in a tangible medium. See Beauregard, 53 F.3d at 1584; Chisum on Patents § 1.02[4][e] (2006) (mentioning Beauregard in discussion of printed matter doctrine and computer-readable memory). Claim 2 claims a process implemented through *unspecified* program instructions. Indeed, the patent teaches nothing more than the *idea* of using a programmed computer to implement the process in some way. Claim 2 does not claim a combination of printed matter, or anything analogous to printed matter, with the "computer readable medium" substrate. Following Bilski, the Board has rightly held that simply appending "A computer readable media including program instructions . . ." to an otherwise non-statutory process claim is insufficient to make it statutory. See Ex parte Cornea-Hasegan, 89 U.S.P.Q.2d 1557, 1561 (B.P.A.I. 2009) (rejecting claim reciting such limitation, under section 101). Like claim 3, claim 2 is subject to the machine-or-transformation test for patent eligibility. As explained above, neither claim meets the test. A reasonable jury could not conclude other than that

14

defendant has clearly and convincingly demonstrated claims 2 and 3 to be non-statutory. Summary judgment in favor of defendant is warranted.[14]

In analyzing Bilski, one is led to ponder whether the end has arrived for business method patents, whose numbers swelled following the decision in State Street Bank & Trust Co. v. Signature Fin. Group, Inc., 149 F.3d 1368 (Fed. Cir. 1998). Without expressly overruling State Street, the Bilski majority struck down its underpinnings. This caused one dissenter, Judge Newman, to write that State Street "is left hanging," while another dissenter, Judge Meyer, registered "an emphatic 'yes'" to rejecting State Street, and a third, Judge Rader, queried whether the court was willing to decide that the entire field of business patents is "undeserving of incentives for invention." 545 F.3d at 995, 998, 1014. Although the majority declined say so explicitly, Bilski's holding suggests a perilous future for most business method patents.[15]

The observations of several Justices suggest that this issue may be expected to receive serious consideration by the Supreme Court. See eBay Inc. v. MercExhcange, LLC, 547 U.S. 388, 397 (2006) (Kennedy, J., concurring) (noting the "potential vagueness" and "suspect validity" of some business method patents); Lab. Corp. of Am. v. Metabolite Labs., 548 U.S. 124, 127, 136-137 (2006) (Breyer, J., dissenting from denial of certiorari) (questioning State Street's adherence to Supreme Court precedent and observing, "Patent law seeks to avoid the dangers of overprotection just as surely as it seeks to avoid the diminished incentive to invent that underprotection can threaten. One way in which patent law seeks to sail between these opposing and risky shoals is through rules that bring certain types of invention and discovery within the scope of patentability while excluding others."). The closing bell may be ringing for business method patents, and their patentees may find they have become bagholders.[16]

15

CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment of invalidity of U.S. Patent No. 6,029,154, claims 2 and 3, is GRANTED. Judgment shall be entered accordingly.

IT IS SO ORDERED.

Dated: March 26, 2009

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

16

**ENDNOTES**

1. Claim 1 also recites the steps of claim 3, as well as the use of particular types of "weighting blocks" or "mechanisms" to check for fraud. Plaintiff has not accused defendant of infringing claim 1.

2. Plaintiff does not argue that its "data structure" is similar to the sort of data structure held statutory in In re Lowry, 32 F.3d 1579 (Fed. Cir. 1994).

3. The court takes judicial notice of the existence of joint credit card accounts. Spouses, for instance, may share such an account. Each spouse has a credit card, but there is only one number. If a credit card number represents a particular physical credit card, which of the two cards does it represent? Plainly, the number does not represent either or both physical cards but rather the one joint account.

4. As noted, plaintiff argues in its opposition brief, consistent with its position on claim construction, that a "map" is a "data structure or logical association." Plaintiff also argues that the transformation prong would be met if defendant's construction of "constructing a map of credit card numbers" were adopted. Defendant would construe that term as "building a geographical display of location of credit card transactions." Joint Claim Construction Statement, Exh. A at 8. Even under defendant's narrower construction, which includes a "display," the limitation would require the display only of transaction locations, not images of physical credit cards. There is no visual depiction of physical credit cards under either construction.

5. Plaintiff also relies upon the characterization of Abele and Arrhythmia found in In re Schrader, 22 F.3d 290, 294 (Fed. Cir. 1994), for the proposition that mere "manipulation" of data suffices to establish patentability. The Schrader court characterized Abele and Arrythmia as both involving the manipulation of signals representative of physical activity or objects. Id. The court distinguished those cases from the application before it, which the court found to claim non-statutory subject matter. Id. at 296. All three of these cases—Abele, Arrythmia and Schrader—applied the "Freeman-Walter-Abele" test rejected in Bilski. That test did not have a transformation prong. See Schrader, 22 F.3d at 292. These cases do not speak to whether "manipulation" equals "transformation" for purposes of the machine-or-transformation test.

6. Notably, Comiskey II characterizes the valid claim in Arrhythmia as having met the machine implementation prong, not the transformation prong. See Comiskey II, 554 F.3d at 979 n.14. In any event, the Comiskey II panel's mention of Arrhythmia in a footnote does not overrule the en banc Bilski decision.

7. The Abele and Arrythmia cases both dealt with technologies that probe the mysteries of a human body. Data was transformed into a visual depiction of something that was previously unknown. The transformation of data into the physical depiction of a credit card would not have the same usefulness, because a credit card is a fully-understood human manufacture. Even if the '154 process visually depicted a credit card, and even if this step otherwise met the transformation prong, it would have no utility. This implicates the legal question of whether the step purportedly meeting the transformation prong must, to do so, contribute to the claimed process's usefulness. The parties have not briefed or raised this issue, and the court does not decide it.

8. Plaintiff has proposed a broader construction of "Internet address" that would include, for instance, email addresses. Unlike an IP address, an email address does not represent a hardware device.

9. Relying upon Gottshalk v. Benson, 409 U.S. 63 (1972), plaintiff asserts that a machine implementation or transformation insufficiently limits a claim's scope only if the claim preempts *all* uses of an algorithm or mental process. This is a misreading of Benson, which found the claim at issue

1  in that case to be non-statutory. In that particular case, a mathematical formula would have been wholly preempted had the patent claim been approved. Id. at 71-72. Such total preemption was *sufficient* to invalidate the patent, but the Supreme Court did not hold that it was *necessary*.

3  10.    Plaintiff does not characterize claim 2 as claiming "software."

4  11.    This Westlaw document contains no internal pagination; the pin cite herein used refers to the third page as printed.

6  12.    Van Beek does not discuss or cite Bilski. Bo Li acknowledges Bilski and holds statutory a claim "present[ing] a number of software components, such as the claimed logic processing module, configuration file processing module, data organization module, and data display organization module, that are embodied upon a computer readable medium." Bo Li at 11. The Bo Li decision appears to rely upon two alternative bases: the supposed Beauregard doctrine, and In re Lowry, 32 F.3d 1579 (Fed. Cir. 1994), standing alone. Id.

9  13.    The Bo Li opinion actually cites section 2105.01, but this is an erroneous or outdated reference.

10 14.    Defendant's motions pertaining to novelty and non-obviousness under sections 102 and 103 are mooted by the disposition of this motion. See Bilski, 545 F.3d at 950, citing Comiskey I, 499 F.3d at 1371 ("Whether a claim is drawn to patent-eligible subject matter under § 101 is a threshold inquiry, and any claim of an application failing the requirements of § 101 must be rejected even if it meets all of the other legal requirements of patentability."); see also Flook, 437 U.S. at 593.

13 15.    The Federal Circuit has decided two panel decisions since Bilski. One of the decisions discussed Bilski and invalidated certain method and "paradigm" claims to the marketing of products by a marketing force. Ferguson, 2009 WL 565074. The other decision applied Bilski's rationale to invalidate a method for arbitration of contract disputes but, extraordinarily, did *not* cite Bilski even once. Comiskey II, 554 F.3d 967. It is hard to know what to make of the Comiskey II panel's decision to track the rationale of Bilski while declining even to mention it.

16 16.    "Bagholder" denotes a shareholder left holding shares of worthless stocks.